JAMES L. WICKERSHAM, plaintiff in error *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

*Error to Clay.*

Acts of official misconduct by justices of the peace, done with corrupt motives, are indictable offences.

An indictment charging that the defendant, a justice of the peace, took up certain estray animals, specifying the number and kind, and corruptly caused the same to be appraised before himself as such justice, is substantially good.

Courts will reluctantly interfere to set aside a verdict and grant a new trial, where the proceedings have been regular.

The fact that the names of two petit jurors are the same as those of two grand jurors, does not show that they are the same persons.

Objections to jurors, if known, should be made before trial.

THIS cause was tried at the March term, 1833, of the Clay Circuit Court.

S. BREESE, for the plaintiff in error, cited Nomaque *v.* The People, Breese 109; Bibb's and Hardin's Reports, *passim.*

N. W. EDWARDS, Attorney General, for the defendants in error.

SMITH, Justice, delivered the opinion of the Court:

Wickersham was indicted for malfeasance in office as a justice of the peace. The indictment charges that he took up certain estray animals, specifying the number and kind, and corruptly caused them to be appraised before himself as such justice. A motion to quash the indictment, was made in the Circuit Court before pleading, but on what particular ground does not appear. A jury trial was had, and verdict of guilty, upon which judgment of fine and removal from office was rendered, upon the recommendation of the jury. None of the evidence is preserved, nor were any instructions asked of the Court. A motion for a new trial was made, and the reasons filed.

The plaintiff in error has assigned for error, that the indictment contains no indictable offence, and that the Circuit Court erred in refusing a new trial from the facts appearing on record.

On the first point we are to enquire, whether an act of an official character, done by a justice of the peace, with a corrupt intent, is an indictable offence, and whether the indictment charges the commission of such an act with such an intent. By the 110th section(1) of the act relative to criminal jurisprudence, passed in 1833, it is expressly provided, that justices of the peace, may, for corrupt acts of oppression, partiality, or malfeasance in office, be indicted, and upon conviction, they shall be fined and removed from office, upon the recommendation of the jury.

(1) R. L. 195; Gale's Stat. 218.

From this provision of that act, it cannot then be doubted, that acts of official misconduct by justices of the peace, done with corrupt motives, are indictable offences. Whether the acts charged in the indictment to have been committed, amount to official misconduct, and whether or not they are charged to have been done with a corrupt intent, and are sufficiently and certainly averred, will be ascertained by comparing the averments with the law regulating the mode of proceedings in the taking up of estray animals.

The indictment charges the accused with taking up the animals and *corruptly causing them to be appraised before himself.* To authorize an appraisement, the party taking up the estray, is to make oath of the fact before a justice of the peace, who is then to issue his warrant to a constable to summon three appraisers, who are to be sworn before a justice, faithfully and impartially to value the estray. These are the facts which are charged under the term, *"appraised before himself,"* used in the indictment to have been corruptly done. Whether the acts were done ignorantly, or for corrupt purposes, would necessarily depend on the evidence exhibited on the trial, but that such acts would, in a case where the justice was a party interested, be illegal, we cannot doubt; and that they would, if done with a corrupt intent, be an act of malfeasance in office, seems equally certain. The indictment is then substantially good, although it might have been more formal and particular in setting out specifically each illegal and corrupt act embraced in the general allegation of " causing the animals to be corruptly appraised before himself." As to the other ground in refusing a new trial, it will be seen that according to the decisions of this Court, it has been adjudged in several civil cases, that the exercise of the power to grant or refuse a new trial, is an act of sound legal discretion, and that with the exercise thereof, this Court will not interfere. The case of the Indian *Nomaque,* decided in this Court in 1825, has been cited as establishing a distinction in favor of granting new trials in criminal cases. From an examination of that case, it will be perceived, that all the Court say, is, that in its opinion, the Circuit Court ought, on the facts which were before it, to have granted a new trial; but it does not intimate that this Court ought to grant one. It will also be perceived that this point formed no ground of the reversal of the judgment in that case; for the proceedings were pronounced *coram non judice,* because the bill of indictment was not endorsed " a true bill," verified by the signature of the foreman of the grand jury. There is, however, a marked difference between the exercise of this power in a civil and in a criminal case.

In a civil case the jury are the judges of the facts only, but in a criminal one, they are not only the judges of the facts, but of

Wickersham *v.* The People.

the law, under the direction of the Court.   Courts will reluctantly interfere to set aside a verdict and grant a new trial, where the proceedings have been regular, and no misconduct has happened in the jurors, merely because the jury may be supposed to have mistaken the law of the case, or may have judged mistakenly with regard to the weight of the evidence.

If this be true with reference to the exercise of this discretionary power in the Court where the accused is tried and asks for a new trial, upon what principle can this Court be required to reverse a decision made, in the exercise of this discretion, under such views of this power?

The reasons on which the new trial was asked for in the Circuit Court, are of extrinsic facts, in reference to the jury after they were charged with the case of the accused, and because two of the petit jurors were members of the grand jury who found the bill of indictment and consented thereto.

The record presents no evidence whatever of the facts alleged, except that on the panels of the jury, the names of the two jurors are similar, but whether they are the same persons, does not appear, nor that the jurors consented thereto, nor that the defendant did not know of the objection before trial, and consequently this Court could not judge of the merits of the application for a new trial, did the Court suppose the present case exempt from the application of the principles laid down.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*

*Note.*   This Court, previous to the passage of the act of July 21, 1837, (Gale's Stat. 540,) repeatedly decided that an application to set aside a default, or to grant a new trial, was an application addressed to the sound discretion of the Court where the judgment was rendered, and that the decision of the Court upon such application, could not be assigned for error.

Garner *et. al. v.* Crenshaw, decided Dec. term, 1834, *Post;* Sawyer *v.* Stephenson, Breese 6; Cornelius *v.* Boucher, do. 12; Clemson *v.* Kruper, do. 162; Collins *v.* Claypole, do. 164; Street *v.* Blue, do. 201; Adams· *et. al. v.* Smith, do. 221; Vernon *et. al. v.* May, do. 229; Littletons *v.* Moses, Breese's App. 9.

The second section of that act provides that, "Exceptions taken to opinions or decisions of the Circuit Courts, overruling motions in arrest of judgment, motions for new trials, and for continuance of causes, shall hereafter be allowed; and the party excepting may assign for error any opinion so excepted to, any usage to the contrary notwithstanding."

This section, however, does not give the right to assign for error a decision of a Circuit Court *granting* a new trial, &c.   It relates only to the decisions of the Courts *overruling* the motions therein contained.   See a case decided Dec. term, 1839.